UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, ASSOCIATED BUILDERS AND CONTRACTORS, ASSOCIATED BUILDERS AND CONTRACTORS OF CONNECTICUT, COALITION FOR A DEMOCRATIC WORKPLACE, CONNECTICUT BUSINESS & INDUSTRY ASSOCIATION, CONNECTICUT RETAIL MERCHANTS ASSOCIATION, NATIONAL ASSOCIATION OF HOME BUILDERS, NATIONAL FEDERATION OF INDEPENDENT BUSINESS, NATIONAL RETAIL FEDERATION,**<br><br>      **Plaintiffs,**<br><br>      v.<br><br>**DANTÉ BARTOLOMEO, in her official capacity as the Commissioner of the Connecticut Department of Labor, WILLIAM TONG, in his official capacity as Attorney General of Connecticut, and the CONNECTICUT DEPARTMENT OF LABOR,**<br><br>      **Defendants.** | Civil Action No. 3:22-cv-1373 |

## COMPLAINT

1. In this case, Plaintiffs Chamber of Commerce of the United States of America ("U.S. Chamber"), Associated Builders and Contractors ("ABC"), Associated Builders and Contractors of Connecticut ("CTABC"), Coalition for a Democratic Workplace ("CDW"), Connecticut Business & Industry Association ("CBIA"), Connecticut Retail Merchants Association ("CRMA"), National Association of Home Builders ("NAHB"), National Federation of Independent Business ("NFIB"), and National Retail Federation ("NRF") (collectively, "Plaintiffs") invoke their federal

constitutional and statutory rights, and the federal constitutional and statutory rights of their members, and seek a judgment (1) declaring that provisions recently added to Connecticut General Statutes Section 31-51q are unconstitutional and preempted, and (2) enjoining Defendants' enforcement of these new provisions against Plaintiffs and their members.

2. The Connecticut General Assembly recently added subsections (a) and (b)(2) to Section 31-51q ("the 2022 Amendments"). Because of the 2022 Amendments, employers in Connecticut are now subject to liability, penalties, and other administrative action when they exercise their federal constitutional and statutory rights to talk to employees about political issues, including "the decision to join or support any . . . labor organization" (hereinafter "labor issues").

3. The 2022 Amendments violate the First and Fourteenth Amendments to the United States Constitution by discriminating against employers' viewpoints on political matters, by regulating the content of employers' communications with their employees, and by chilling and prohibiting employer speech.

4. The 2022 Amendments are also preempted by the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.* ("NLRA"). The NLRA comprehensively regulates labor relations. For decades, and consistent with the First Amendment, the NLRA has protected the right of employers and other parties to express their views on unionization to their employees. *See* NLRA Section 8(c), 29 U.S.C. § 158(c). Conversely, the NLRA prohibits statements and actions, including unlawful threats, which interfere with, restrain, or coerce employees in the exercise of their rights protected by the NLRA. *See* NLRA Sections 8(a)(1), 8(b)(1)(A), 29 U.S.C. §§ 158(a)(1), 158(b)(1)(A). The 2022 Amendments intrude into this subject matter where Connecticut and other states have no power to regulate.

5. This Court can and should vindicate the federal constitutional rights of Plaintiffs and their members to engage in protected speech with their employees and, alternatively, end Connecticut's intrusion into an area preempted and exclusively regulated by the NLRA.

## JURISDICTION AND VENUE

6. Plaintiffs bring this cause of action under 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908), to enforce the federal constitutional and statutory rights of Plaintiffs and their members. This Court has jurisdiction under 28 U.S.C. § 1331.

7. Plaintiffs also have associational standing to bring this suit on behalf of their various members. Their members are directly and adversely affected by the 2022 Amendments and accordingly have standing to sue in their own right. The 2022 Amendments are at odds with each Plaintiff's policy objectives, and challenging the 2022 Amendments is germane to each Plaintiff's purposes. Neither the claims asserted nor the relief requested requires individual members to participate in the suit.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The District of Connecticut is where a substantial part of the events giving rise to Plaintiffs' claims have occurred, are now occurring, and will occur in the future if not curtailed. Plaintiffs' employer members are situated in this district and are and will continue to be adversely affected by the irreparable harms sought to be remedied and prevented by this Court's action upon this Complaint.

## NATURE OF ACTION

9. Plaintiffs seek declaratory relief that Section 31-51q(a) and (b)(2), found in Chapter 557 of Title 31 of the Connecticut General Statutes, are unconstitutional and preempted by the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* Plaintiffs seek prospective injunctive relief enjoining Defendants' enforcement of the 2022 Amendments against employers who discharge or discipline employees for refusing to attend employer-sponsored meetings, or refusing to listen to

employer speech or view employer communications, in which the employers intend to communicate their opinions on political matters, including union involvement.

## PARTIES

10. Plaintiff the Chamber of Commerce of the United States of America is the world's largest business federation, representing an underlying membership of approximately 300,000 direct members and indirectly representing the interests of more than three million businesses and organizations of every size and in every industry sector and region of the country, including in the State of Connecticut. A principal function of the U.S. Chamber is to represent the interests of its members on issues of vital concern to the business community before Congress, the Executive Branch, and the courts. The U.S. Chamber regularly initiates litigation on its members' behalf.

11. Plaintiff Associated Builders and Contractors is a national construction industry trade association representing more than 21,000 members. ABC and its 68 chapters represent all specialties within the U.S. construction industry, comprised primarily of firms that perform work in the industrial and commercial sectors. ABC's employer members are chilled by Section 31-51q in their exercise of free speech rights toward their own employees.

12. Plaintiff Associated Builders and Contractors of Connecticut is an ABC chapter. CTABC's 200-plus employer members are covered by both the National Labor Relations Act and Section 31-51q and are frequently targeted by union organizing efforts, creating the need to communicate lawfully with their employees on this important topic. CTABC's employer members are chilled by Section 31-51q in their exercise of free speech rights toward their own employees.

13. Plaintiff Coalition for a Democratic Workplace represents hundreds of organizations that employ tens of millions of individuals working in every industry and every region in the United States. CDW provides a collective voice to its membership on labor law reform, including on efforts to unlawfully limit employer speech during collective bargaining negotiations and union

4

representation elections. CDW members and the organizations they represent regularly speak with employees regarding the issues limited by Section 31-51q.

14. Plaintiff Connecticut Business & Industry Association is Connecticut's largest business organization. Its membership comprises thousands of member companies and organizations, small and large, in a diverse range of industries from across the state. Ninety-five percent of CBIA's member companies are small businesses with less than 100 employees. CBIA represents the interest of its membership and indirectly represents Connecticut's approximately 400,000 businesses before Connecticut's General Assembly, state executive branch agencies, and both state and federal courts. To that end, CBIA regularly files amicus curiae briefs in cases, like this one, that raise issues of concern to Connecticut's business community.

15. The Connecticut Retail Merchants Association has been working on its behalf at the State Capitol since 1910. CRMA's mission is to strengthen Connecticut Retailing through legislative initiatives and also by leveraging its unique buying power to obtain the best value in merchant services on behalf of its membership. CRMA has voiced its viewpoint on numerous issues in the past, including on employment matters. CRMA's members will be impacted by the law in question.

16. Plaintiff National Association of Home Builders is a Washington, D.C.- based trade association whose mission is to enhance the climate for housing and the building industry. Chief among NAHB's goals are providing and expanding opportunities for all people to have safe, decent, and affordable housing. Founded in 1942, NAHB is a federation of more than 700 state and local associations. About one-third of NAHB's approximately 120,000 members are home builders or remodelers and are responsible for the construction of 80% of all new homes in the United States. The remaining members are associates working in closely related fields within the housing industry,

such as environmental consulting, mortgage finance, and building products and services. In Connecticut, NAHB has over 800 member firms and those firms employ over 25,000 people throughout the state. In addition, NAHB has five local associations that are part of the federation, including the state association, the Home Builders and Remodelers Association of Connecticut. NAHB's member firms and associations often conduct meetings with their employees where they discuss regulatory proposals, upcoming elections, and the impacts of unionization.

17. Plaintiff National Federation of Independent Business is the nation's leading small business association, representing members in Washington, D.C., and all fifty states. Its membership spans the spectrum of business operations, ranging from sole proprietor enterprises to firms with hundreds of employees. Founded in 1943 as a nonprofit, nonpartisan organization, NFIB's mission is to promote and protect the right of its members to own, operate, and grow their businesses.

18. Plaintiff National Retail Federation is the world's largest retail trade association and the voice of retail worldwide. NRF's membership includes retailers of all sizes, formats, and channels of distribution, as well as restaurants and industry partners from the United States and more than 45 countries abroad. NRF has filed briefs in support of the retail community on dozens of topics.

19. The 2022 Amendment will injure Plaintiffs' members in Connecticut. Some of their employer members have conducted or engaged in, and plan to conduct or engage in, employer-sponsored meetings, speech, or other communications having the primary purpose of communicating the employer's opinion concerning political matters as defined in the law, which include (among other things) the decision to join or support a labor organization. These employers conduct meetings, engage in speech, and issue communications addressing many topics in the

normal course of business, including important employment matters and other critical issues relating to the company (including what Section 31-51q defines as "political matters"). For this reason, employees are expected and required to attend, listen to, and review these types of employer-sponsored meetings, speech, and communications, and the failure to do would subject employees to potential discipline or discharge.

20. For example, CBIA and at least some of its members are affected by the amendment to Section 31-51q. CBIA has held meetings with and provided written and other communications to employees about political issues. CBIA has required all employees, including those who are not engaged in political advocacy, to attend these meetings. The purpose of some of these meetings and communications was to communicate CBIA's position and opinions on political matters, including elections for political office, proposals to change legislation, proposals to change regulations, and its support of, opposition to, or coalition-building activities with various political, civic, or community organizations. During several of these meetings, CBIA communicated its opposition to political positions taken by public-sector labor organizations, where those positions negatively impact the financial well-being of the state and opportunities for residents and potential residents, and the negative implications of expanding outdated, costly, and inflexible public-sector union practices to non-unionized private-sector workplaces. CBIA believes that Section 31-51q exposes CBIA and its member companies to financial liability, costs, and attorneys' fees based on any meetings and communications concerning political issues that CBIA and its member companies conduct or issue in the future. Based on the risk of incurring liability, costs, and attorneys' fees, CBIA believes it and its member companies must either refrain from future meetings and communications concerning political issues or go forward with meetings and communications while exposing themselves to legal risk, including liability, costs, and attorneys' fees.

21. Danté Bartolomeo is the Commissioner of the Connecticut Department of Labor. The Commissioner is charged with, *inter alia*, overseeing the Department of Labor and enforcing provisions and requirements of Connecticut's labor laws, including Section 31-51q and the 2022 Amendments in particular. The Commissioner can investigate alleged violations of the 2022 Amendments and can seek penalties or fines from employers who violate them. *See* Conn. Gen. Stat. § 31-69a(a). The Commissioner can also take administrative actions against employers who violate the 2022 Amendments; for example, the Commissioner can decide whether an employee was discharged in violation of the 2022 Amendments and can charge the former employer for that individual's unemployment benefits.

22. William Tong is the Attorney General of Connecticut. The Attorney General can bring a civil action in the Connecticut Superior Court to recover penalties that employers owe to the Commissioner for violating Section 31-51q. *See* Conn. Gen. Stat. § 31-69a.

23. The Connecticut Department of Labor includes all employees who are overseen by the Commissioner and who are involved in the Commissioner's various efforts to enforce Section 31-51q.

**FACTS**

24. In accordance with the NLRA and the First and Fourteenth Amendments to the United States Constitution, employers have the right to communicate with their employees about the employers' viewpoints on politics, unionization, and other labor issues, as well as the right to require employees to attend meetings or otherwise view communications about those issues.

25. In 2018 and 2019, the Assembly considered bills to amend Section 31-51q of the Connecticut General Statutes in order to regulate employers' communications with their employees: House Bill 5473, *An Act Concerning Captive Audience Meetings*, and Senate Bill 440, *An Act Protecting Employee Freedom of Speech and Conscience*. The Attorney General opined

that H.B. 5473 was likely preempted by the NLRA. *See* Preemption of House Bill 5473, 2018 WL 2215260 (Conn. A.G. Apr. 26, 2018). Neither bill became law.

26. On February 23, 2022, the Assembly again considered amending Section 31-51q to regulate employers' communications with their employees. Senate Bill 163, Reg. Session (Conn. 2022). This time, the bill passed, and the Governor signed the bill into law on May 17, 2022.

27. Senate Bill 163 added subsections (a) and (b)(2) to Section 31-51q.

28. As amended, Section 31-51q(b) now provides that "any employer, including the state and any instrumentality or political subdivision thereof, who subjects or threatens to subject any employee to discipline or discharge on account of … (2) such employee's refusal to (A) attend an employer-sponsored meeting with the employer or its agent, representative or designee, the primary purpose of which is to communicate the employer's opinion concerning religious or political matters, or (B) listen to speech or view communications, the primary purpose of which is to communicate the employer's opinion concerning religious or political matters, shall be liable." Conn. Gen. Stat. § 31-51q(b)(2).

29. Section 31-51q(a) defines "political matters" as "matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulation and the decision to join or support any political party or political, civic, community, fraternal or labor organization." Conn. Gen. Stat. § 31-51q(a)(1).

30. Employers who violate Section 31-51q(b)(2) "shall be liable to such employee for the full amount of gross loss of wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court." Conn. Gen. Stat. § 31-51q(b).

31. Employers who violate Section 31-51q(b)(2) are subject to state action, in addition to any liability to affected employees.

9

32. Defendants can seek penalties from employers that violate Section 31-51q(b)(2).

33. Defendants can award unemployment benefits to employees discharged in violation of Section 31-51q(b)(2) and, in turn, charge employers for those benefits.

34. Under 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress … ."

35. Under 28 U.S.C. § 2201, "In a case of actual controversy within its jurisdiction," this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

36. The 2022 Amendments are currently violating the constitutional and statutory rights of Connecticut's employers, including Plaintiffs' members. Without a declaratory judgment and an injunction against enforcement of the 2022 Amendments, Defendants will deprive Plaintiffs and their members of their federal rights.

**COUNT I – THE 2022 AMENDMENTS ARE UNCONSTITUTIONAL**

37. The 2022 Amendments violate the rights of speech and assembly, secured by the First and Fourteenth Amendments to the United States Constitution, of Plaintiffs and their members.

38. The 2022 Amendments threaten employers with civil liability, penalties, and other regulatory repercussions for speaking with their employees about a range of important issues, like whether certain candidates for office are likely to be good or bad for the company or whether to support or oppose new laws concerning public safety, economic stability, racial equality, taxes, and

more.  Furthermore, the 2022 Amendments threaten employers with penalties for discussing regulatory proposals that may impact the day-to-day operations of the business.

39. Connecticut has taken the extraordinary step of enacting legislation that imposes sanctions on employers who disseminate truthful information and express their opinions on matters of public concern—speech that "is at the heart of the First Amendment's protection." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978). By their express terms, the 2022 Amendments regulate speech on "matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulation and the decision to join or support any political party or political, civic, community, fraternal or labor organization." Conn. Gen. Stat. § 31-51q(a)(1). Because "the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue," the 2022 Amendments violate Plaintiffs' First Amendment rights. *Bellotti*, 435 U.S. at 784–85.

40. The 2022 Amendments' regulation of employer speech is a form of prohibited content-based discrimination. The 2022 Amendments regulate speech on political matters—a subject matter that is entitled to the highest form of protection. Although some content-based restrictions pass constitutional muster, political speech is at the core of what the First Amendment was enacted to protect.

41. The 2022 Amendments' regulation of employer speech on labor issues, like its restriction of speech on political matters in general, is a form of prohibited content-based discrimination.

42. The 2022 Amendments' regulation of employer speech about "political matters," including "the decision to join or support any … labor organization," is also a form of prohibited viewpoint-based discrimination. The 2022 Amendments single out employers and prevent them

11

from effectively sharing their opinions on political matters of public concern, including opinions against unionization, and from explaining the effects unionization could have on the employers' business.

43. The 2022 Amendments prevent employers from sharing true facts with employees about the costs of unionization, such as employees' need to pay dues for representation, unions' interference with employer-employee relationships, unions' prioritization of the collective over the individual employees, and the financial impacts on employers. As a result, employees will be deprived of complete information and be unable to make informed choices about whether to unionize.

44. The State of Connecticut has no compelling interest in protecting employees from hearing their employers' opinions on any issues, let alone political and labor issues. The State of Connecticut also has no compelling interest in depriving employees of factual information related to political and labor issues.

45. The 2022 Amendments are overbroad and discriminatory and chill employers' speech and assembly rights guaranteed by the First and Fourteenth Amendments. These unconstitutional flaws are magnified by the statute's vagueness and extreme breadth. Section 31-51(b)(2) prohibits employers from disciplining or threatening to discipline employees who refuse to attend employer-sponsored meetings or to listen or view employer communications when the "primary purpose" of the meetings or communications "is to communicate the employer's opinion concerning religious or political matters." Section 31-51q(a)'s definition of "political matters" only vaguely and imprecisely includes "any matters *relating to*" a range of topics. As such, employers cannot reasonably know whether a particular matter is sufficiently related to a topic so as to expose them to liability. And the statute does not define "primary purpose" at all—

leaving employers to speculate about the term's open-ended meaning. In addition, there are a multitude of legislative and regulatory proposals pending in Connecticut and the federal government (to say nothing of other states or local governments). Employers cannot reasonably know whether a company matter the employer intends to discuss at a mandatory meeting is related to one of these countless pending laws or regulations and whether doing so would expose them to liability. Section 31-51q is not narrowly tailored toward any legitimate end.

46. Because the 2022 Amendments are not narrowly tailored to achieve any compelling governmental interest, Section 31-51q cannot survive strict scrutiny.

## COUNT II – THE 2022 AMENDMENTS ARE PREEMPTED BY THE NLRA

47. The National Labor Relations Act comprehensively regulates labor matters throughout the United States. *See, e.g.*, *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 241 (1959); *Lodge 76, Int'l Ass'n of Machinists v. Wis. Emp. Rels. Comm'n ("Machinists")*, 427 U.S. 132, 144 (1976).

48. The 2022 Amendments are preempted by Section 8(c) of the NLRA pursuant to *Garmon* preemption because the 2022 Amendments purport to prohibit conduct the NLRA permits and to frustrate rights the NLRA guarantees to employers. The 2022 Amendments are also preempted by the NLRA pursuant to *Machinists* preemption because the 2022 Amendments purport to regulate areas Congress intentionally left to be controlled by the free play of economic forces.

49. Under the NLRA, employees have the right "to form, join, or assist labor organizations" and the right "to refrain from any or all of such activities." 29 U.S.C. § 157.

50. Under the NLRA, employers have the right to "express[ ] any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form … if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c).

51. In *Chamber of Commerce v. Brown*, 554 U.S. 60 (2008), the U.S. Supreme Court interpreted Section 8(c) and observed that, in addition to "implement[ing] the First Amendment" for employers, Section 8(c) "manifested a 'congressional intent to encourage free debate on issues dividing labor and management'" and reflected a "policy judgment" that "favor[ed] uninhibited, robust, and wide-open debate in labor disputes, stressing that freewheeling use of the written and spoken word … has been expressly fostered by Congress and approved by the NLRB." *Id.* at 67–68 (quotations omitted).

52. The 2022 Amendments threaten employers with civil liability, penalties, and other regulatory repercussions for speaking with their employees about unionization and supporting labor unions.

53. The 2022 Amendments conflict with and are preempted by the NLRA. Section 7 of the NLRA gives employees the right "to form, join, or assist labor organizations" and the right "to refrain from any or all of such activities," 29 U.S.C. §157, and Section 8(c) of the NLRA gives employers the right to "express[ ] any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form … if such expression contains no threat of reprisal or force or promise of benefit," 29 U.S.C. § 158(c). The 2022 Amendments take the latter rights away—preventing employers from requiring employees to merely listen to or read employers' opinions on employees' exercise of rights.

54. The 2022 Amendments are preempted pursuant to *Garmon* preemption even if, as the General Counsel of the National Labor Relations Board has argued (in a complete break from precedent, and contrary to NLRA Section 8(c) and the guarantees conferred by the First Amendment), mandatory meetings and employer speech concerning the exercise of NLRA-protected rights should be deemed inherently coercive and unlawful under the NLRA. NLRB

General Counsel Memo 22-04, "The Right to Refrain from Captive Audience and Other Mandatory Meetings" (April 7, 2022). *See, e.g., Garmon,* 359 U.S. at 245 (the States are "ousted of all jurisdiction" if the NLRB decides conduct is *either* "protected" or "prohibited" by the NLRA).

55. Under the Supremacy Clause of the United States Constitution, federal law trumps any conflicting state law. Therefore, the 2022 Amendments are preempted by the NLRA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs hereby request that the Court enter a judgment:

1. Declaring that:

    a. Section 31-51q(a) and (b)(2) are unconstitutional; and

    b. Section 31-51q(a) and (b)(2) are preempted by the NLRA;

2. Enjoining Defendants from enforcing the 2022 Amendments against Plaintiffs and their members, and from taking other official actions against Plaintiffs and their members, based upon violations of Section 31-51q(b)(2);

3. Awarding Plaintiffs the costs and attorneys' fees expended on this action, in accordance with 42 U.S.C. § 1988 and other applicable law; and

4. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: November 1, 2022                    Respectfully submitted,

By:   /s Bryan M. Killian

MORGAN LEWIS & BOCKIUS LLP
BRYAN M. KILLIAN
PHILIP A. MISCIMARRA (*pro hac vice* forthcoming)
DAVID B. SALMONS (*pro hac vice* forthcoming)
AMANDA L. SALZ (*pro hac vice* forthcoming)
1111 Pennsylvania Ave., NW
Washington, DC 20004-2541
Telephone: (202) 739-5565
Fax: (202) 739-30001
bryan.killian@morganlewis.com
philip.miscimarra@morganlewis.com
david.salmons@morganlewis.com
amanda.salz@morganlewis.com

*Attorneys for the Chamber of Commerce of the United States of America, Associated Builders and Contractors, Associated Builders and Contractors of Connecticut, Coalition for a Democratic Workplace, Connecticut Business & Industry Association, Connecticut Retail Merchants Association, National Association of Home Builders, National Federation of Independent Business, and National Retail Federation*

U.S. CHAMBER LITIGATION CENTER
DARYL JOSEFFER (*pro hac vice* forthcoming)
STEPHANIE A. MALONEY (*pro hac vice* forthcoming)
1615 H Street, N.W.
Washington, DC 20062-2000
(202) 463-5337
djoseffer@uschamber.com
smaloney@uschamber.com

*Attorneys for the Chamber of Commerce of the United States of America*

LITTLER MENDELSON, P.C.
MAURICE BASKIN (*pro hac vice* forthcoming)
815 Connecticut Avenue, NW
Suite 400
Washington, DC 20006-4046

*Attorney for Associated Builders and Contractors and Associated Builders and Contractors of Connecticut*

17