**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE : | CIVIL ACTION NO. |
| UNITED STATES OF AMERICA, : | 3:22-CV-01373(KAD) |
| ET AL. : | |
| *Plaintiffs* : | |
| : | |
| v. : | |
| : | |
| DANTÉ BARTOLOMEO, ET AL. : | |
| *Defendants* : | DECEMBER 27, 2022 |

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS**

Conn. Gen. Stat. § 31-51q, as recently amended by Public Act No. 22-24 ("P.A. 22-24"), provides employees with a private statutory cause of action against their employer for firing or disciplining them (or threatening to do so) for refusing to attend employer-sponsored meetings or refusing to listen to or view communications about political or religious matters that are unrelated to essential job functions. Plaintiffs claim in this pre-enforcement action that P.A. 22-24 violates employers' First Amendment free speech rights and, insofar as it covers meetings about labor unionization, is preempted by the National Labor Relations Act ("NLRA"). These claims lack merit and are based upon fundamental misinterpretations of what § 31-51q actually says and does. Among other things, § 31-51q does not implicate speech concerns because it regulates conduct, not speech, and it is not preempted because it is a basic workplace standards law that addresses deeply rooted interests in employee freedom—interests for which the NLRA provides no avenue for relief.

1

This Court, however, cannot reach those issues because it lacks subject matter jurisdiction over this case.   First, Plaintiffs all lack standing.   They are nine associations seeking to enforce the rights of their employer members, whose speech Plaintiffs generally allege has been "chilled" by their fear of the possibility they could be subject to lawsuits—or civil penalties under Conn. Gen. Stat. § 31-69a—at some point in the future for engaging in conduct prohibited by § 31-51q.   Although associations can have "associational standing" to sue on behalf of their members in certain limited circumstances, Plaintiffs lack associational standing because (1) they bring their claims under 42 U.S.C. § 1983 and the Second Circuit has squarely held that associational standing does not apply to § 1983 claims; and (2) even if associational standing were available, which it is not, Plaintiffs have failed to establish the requirements for associational standing because their Complaint fails to plausibly allege that any of their individual members would have standing to sue in their own right.

Furthermore, to the extent Plaintiffs claim to have "organizational standing," i.e. a direct injury to themselves—and it is unclear Plaintiffs are even pursuing this theory—they fail there as well.   Their Complaint fails to allege that § 31-51q caused any perceptible impairment to their core functions.   Plaintiffs' general interest in § 31-51q and its potential impact on their members is not a legally cognizable injury in fact.   Nor does the single reference to one Plaintiff's subjective, and entirely speculative, belief that it should "refrain from" participating in "future meetings" out of fear of exposing itself to liability establish standing.   *See Compl.*, ¶ 20.   Plaintiffs

have no reason to fear an enforcement action against them merely for participating in their members' meetings. Section 31-51q plainly does not prohibit that conduct, and in fact does not even apply to Plaintiffs in the first instance because, as associations, they are not "employer[s]" as that term is used in § 31-51q(b). Plaintiffs cannot "manufacture standing by choosing to [take certain actions] based on hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013). Moreover, since Plaintiffs themselves have not suffered a direct, or even indirect, injury, their claims are unripe.

Second, even if Plaintiffs did have standing, the Eleventh Amendment would bar their claims. This Court cannot enjoin the more than 1.9 million workers in Connecticut from pursuing the private cause of action that § 31-51q permits employees to bring in Superior Court to recover lost wages. Enjoining enforcement of § 31-51q would therefore amount to "enjoin[ing] the world at large," or "enjoin[ing] [the] challenged law[] [itself]," which courts cannot do. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021). Insofar as Plaintiffs seek to enjoin Defendants from seeking civil penalties under § 31-69a for violations of § 31-51q, Plaintiffs have not established a credible threat of enforcement by the DOL Commissioner or the Attorney General that would warrant application of the narrow exception to Eleventh Amendment immunity under *Ex parte Young*, 209 U.S. 123 (1908).

This Court should dismiss Plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction.

## I.     BACKGROUND

### A.     Binding precedent establishes that § 31-51q, as amended by P.A. 22-24, only applies if there is an employer-employee relationship.

Section 31-51q was enacted in 1983.  *See* Public Act No. 83-578; *Wydra Dec.*, ¶ 15.  As originally enacted, § 31-51q provided employees with a statutory cause of action against "any employer" who fired or disciplined them for exercising rights protected by the First Amendment or article first, §§ 3, 4, or 14, of the Connecticut constitution.

In 2022, the General Assembly passed P.A. 22-24, which amended § 31-51q(b) such that it now provides, in relevant part:

> (b) Except as provided in subsections (c) and (d) of this section, any employer, including the state and any instrumentality or political subdivision thereof, who subjects or threatens to subject any employee to discipline or discharge on account of . . . such employee's refusal to (A) attend an employer-sponsored meeting with the employer or its agent, representative or designee, the primary purpose of which is to communicate the employer's opinion concerning religious or political matters, or (B) listen to speech or view communications, the primary purpose of which is to communicate the employer's opinion concerning religious or political matters, shall be liable to such employee for the full amount of gross loss of wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court.

Subsection (a) narrowly defines the terms "political matters" and "religious matters" for purposes of § 31-51q(b).  "Political matters" "means matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulation and the decision to join or support any political party

4

or political, civic, community, fraternal or labor organization . . . ."  "Religious matters" "means matters relating to religious affiliation and practice and the decision to join or support any religious organization or association."  The statute also expressly does not apply to, among other things, communications of information necessary for employees to perform their job duties, Conn. Gen. Stat. § 31-51q(c)(2), and religious institutions.  Conn. Gen. Stat. § 31-51q(d).

In addition to the narrowly crafted definitions, § 31-51q only applies to "employer[s]."  As a result, the Connecticut Appellate Court has held that an employee has a viable cause of action under the statute only if he/she can establish "an employer-employee relationship . . . ."  *Varley v. First Student, Inc.*, 158 Conn. App. 482, 497 (2015) (*quoting Young v. Bridgeport*, 135 Conn. App. 699, 706 (2012)).  The Appellate Court has also interpreted the word "employer" in § 31-51q(b) consistently with how that term is defined in other statutes in chapter 557, i.e., "a person engaged in business who has employees . . . ."  *Varley*, 158 Conn. App. at 499; *see* Conn. Gen. Stat. §§ 31-40c(a)(2), 31-40j(2), 31-40q(a)(2), and 31-51m(a)(2).  In reaching that conclusion, the Appellate Court rejected the argument that an employee could enforce § 31-51q against an organization that merely contracted with her direct employer.[1]  *Varley*, 158 Conn. App. at 501.

---

[1] The Appellate Court's interpretations of § 31-51q are binding in this lawsuit because the Connecticut Supreme Court has not addressed those questions and there is no reason to suspect it would decide them any differently. *See, e.g.*, *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).  Further, none of the amendments to § 31-51q call those interpretations into question.

5

**B.**    **DOL does not typically investigate potential violations of workplace standards laws absent a complaint from an employee, and has never done so with respect to § 31-51q.**

DOL could not bring a civil action against an employer in Superior Court under § 31-51q, which merely provides a private right of action for, and is enforceable only by, individual employees. *Wydra Dec.*, ¶ 22. DOL does have authority under § 31-69a to impose a $300 civil penalty against an employer for violations of § 31-51q. *Id.*, ¶ 18. However, DOL could not impose civil penalties under § 31-69a for violations of § 31-51q against associations engaging with the employees of its member employers, since § 31-51q only applies if there is an employer-employee relationship. *Id.*, ¶ 23.

Further, even if there were an employer-employee relationship, multiple contingencies would need to occur for DOL to levy a civil penalty under § 31-69a, or for the Attorney General to commence an enforcement action to recover those penalties. DOL's Wage and Workplace Standards Division ("Standards Division") is responsible for investigating alleged violations of workplace standards laws, including § 31-51q. *Wydra Dec.*, ¶ 1. Although the Standards Division has authority to initiate its own investigations into workplace standards violations, in practice it generally does not do so unless it receives a formal complaint from an employee. *Id.*, ¶¶ 5, 16. Employees may file complaints with the Standards Division through DOL's website, listing the nature of and basis for their claim. *Id.*, ¶¶ 6-7.

DOL does not, however, take action in response to every complaint. DOL staff first reviews each complaint to determine whether DOL has jurisdiction and whether the allegations meet a minimum level of credibility. *Id.*, ¶ 8. Reviewing staff can

only refer a complaint for investigation if the answer to both threshold questions is *yes*. *Id.*

Further, even the initiation of an investigation does not mean the employer will be subject to a civil penalty. Instead, the staff member conducting the investigation has discretion to determine on a case-by-case basis how the investigation should be conducted. *Id.*, ¶ 9. Generally, investigations entail interviews of the complaining employee, the employer and other relevant witnesses, and review of relevant personnel records. *Id.*

DOL only has authority under § 31-69a to impose civil penalties if the Standards Division concludes, following the investigation and internal discussion, that an employer violated a wage or workplace standards law. *Id.*, ¶¶ 9-10. If the employer fails or refuses to pay that penalty, DOL's Commissioner has discretion to refer the matter to the Attorney General for enforcement and collection. *Id.*, ¶ 11; *see* Conn. Gen. Stat. § 31-69a(c). If the Commissioner does make that referral, the Attorney General "shall" institute a civil action to recover those penalties. Conn. Gen. Stat. § 31-69(c).

The Standards Division has not received any complaints from employees alleging violations of § 31-51q since P.A. 22-24 was enacted. *Wydra Dec.*, ¶ 20-21. In fact, as far as DOL is aware, the Standards Division has received no such complaints since § 31-51q was first enacted in 1983. *Id.* DOL has not initiated any investigations into employers for violations of § 31-51q, much less imposed civil penalties for

violations or referred any § 31-51q matters to the Attorney General for enforcement. *Id.*, ¶¶ 21.

### C.    Plaintiffs' lawsuit

Plaintiffs are nine entities that describe themselves as membership associations. They allege that their membership varies in numbers, business sectors or industries, purposes, and geographical locations. *See Compl.*, ¶¶ 10-18. Plaintiffs generally allege that they represent and advocate for the interests of their members, often participating in litigation on their behalf, and that § 31-51q generally will negatively impact their members' business interests. *See id..* Plaintiffs claim that they seek in this lawsuit to vindicate their own rights as well as the rights of their members. *Id.*, ¶¶ 1, 5-7. Nowhere in the Complaint do Plaintiffs allege that they are themselves employers and thus subject to the requirements of § 31-51q. Nor do they allege that they or any of their members have faced a lawsuit under § 31-51q, or that DOL has levied civil penalties against them under § 31-69a or threatened to do so.

Plaintiffs claim that § 31-51q, as amended by P.A. 22-24, (1) violates employers' free speech rights and (2) insofar as it defines "political matters" to include meetings about labor organizing, is preempted by the NLRA. Plaintiffs bring their claims under § 1983. *Id.*, ¶ 6. They seek a declaration that § 31-51q(a) and (b) are unconstitutional and preempted, and "prospective injunctive relief enjoining Defendants' enforcement of [P.A. 22-24] against employers who discharge or discipline employees for refusing to attend employer-sponsored meetings, or refusing to listen to employer speech or view employer communications, in which the

8

employers intend to communicate their opinions on political matters, including union involvement." *Id.*, ¶ 9.

## II. ARGUMENT

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

In the present case, Defendants' challenge to subject matter jurisdiction is both facial and factual. "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint," the plaintiff "has no evidentiary burden" and the court must "determine whether the [p]leading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Plaintiffs' Complaint fails to allege facts establishing standing, ripeness, or that Defendants are proper parties for purposes of *Ex parte Young* and the Eleventh Amendment. Alternatively, even if the pleadings are sufficient, Defendants also "make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the pleading[s]" in the form of Thomas Wydra's declaration. *Id.*, 56-57. That declaration establishes that any potential future injury is far too speculative pass muster under any of the above doctrines.

9

### A. Plaintiffs lack standing to bring this pre-enforcement challenge to § 31-51q.

"To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).  An injury-in-fact must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.*, 158.  Organizations such as Plaintiffs "may have standing in one of two ways:  by establishing so-called 'associational' or 'representational' standing to sue on behalf of its members, or by establishing that it was directly injured as an organization." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021).

As set forth below, Plaintiffs lack standing under either theory.  At the outset, however, Defendants note that Plaintiffs do not appear to even attempt to establish organizational standing based upon a direct injury to themselves.  Although Plaintiffs vaguely refer to vindicating their own legal rights, *Compl.*, ¶¶ 1, 5-7, they make no allegations that would affirmatively and plausibly support a conclusion that Plaintiffs (as opposed to their members) have been injured by P.A. 22-24.  That is not surprising, since nothing in the Complaint suggests that Plaintiffs are even subject to § 31-51q.  They do not plead any facts to suggest that they are "employers" as that term was interpreted in *Varley*, 158 Conn. App. at 497-501, and do not purport to bring this lawsuit in their capacity as employers rather than merely as associations.  If Plaintiffs are not subject to § 31-51q, they cannot be held liable for civil penalties under § 31-69a for violating § 31-51q.  Only actual employers, i.e., Plaintiffs'

individual members, could potentially be held liable for violating § 31-51q. That effectively precludes Plaintiffs from establishing organizational standing.

1.   **Plaintiffs lack associational standing because their claims arise under § 1983, and they have failed to plead the requirements of associational standing.**

Plaintiffs lack associational standing for two independent reasons.  First, "Plaintiffs bring this cause of action under . . . § 1983," *Compl.*, ¶ 6, and "[i]t is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under . . . § 1983" because "the rights [§ 1983] secures [are] personal to those purportedly injured."  *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011); *see also New York State Citizens' Coalition for Children v. Poole*, 922 F.3d 69, 74-75 (2d Cir. 2019) ("this Court has held that organizations suing under [§] 1983 [cannot] rely[] on their members' injuries" to establish standing), *cert. denied*, 140 S. Ct. 956 (2020).  Associational standing is therefore categorically unavailable for claims brought under § 1983.  Since associational standing is the only theory Plaintiffs distinctly raise in their Complaint, this Court need go no further.  It should dismiss this lawsuit in its entirety on that basis alone.

Second, even if associational standing were available, Plaintiffs have failed to establish its requirements.  "[A]n association has standing to bring suit on behalf of its members when [(1)] its members would otherwise have standing to sue in their own right; [(2)] the interests it seeks to protect are germane to the organization's purpose; and [(3)] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple*

*Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Plaintiffs bear the burden of alleging facts to establish each of those requirements.  *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 496-97 (S.D.N.Y. 2020) (failure to plead associational standing requires dismissal). Plaintiffs have not met that burden.

In particular, Plaintiffs' complaint fails to establish the first prong of *Hunt*, which requires that the association have "at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food and Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996).  To satisfy that element at the pleading stage, the association must make "specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added).  In other words, "the complaint . . . must identify by name at least one member that has standing . . . ." *Pharm. Rsch. & Mfrs. of Am. v. Becerra*, Docket No. 1:21-cv-1395 (CJN), 2021 U.S. Dist. LEXIS 230186, at *11-12 (D.D.C. Dec. 1, 2021) (*citing Fac. New York Univ.*, 11 F.4th 68, 76 (2d Cir. 2021)); *see also Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (*Souter, J.*); *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *Pan Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 321 (S.D.N.Y. 2020); *Equal Vote Am. Corp. v. Pelosi*, 397 F. Supp. 3d 503, 509 (S.D.N.Y. 2019) (McMahon, C.J.).

Plaintiffs have not identified by name any individual members with standing to sue. So they have failed to establish the first *Hunt* element.[2]

Even if Plaintiffs were not required to "name names" in their Complaint, Plaintiffs have still failed to establish prong one of *Hunt* because they have failed to plead "facts that affirmatively and plausibly suggest" that any of their members have standing to sue. *Faculty*, 11 F.4th at 75-76. In pre-enforcement actions like this one, plaintiffs only have standing "where the threatened injury is real, immediate, and direct." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017). They must allege that they intend to engage in specific conduct that the statute proscribes and that there is a sufficiently imminent risk of enforcement to justify federal court intervention. *See, e.g.*, *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015); *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 690 (2d Cir. 2013).

---

[2] Some courts in this Circuit have held that an association need not identify the members with standing by name, at least at the pleading stage. *See We the Patriots USA, Inc. v. Conn. Office of Early Childhood Dev.*, 579 F. Supp. 3d 290, 301 (D. Conn. 2022) (Arterton, J.) (noting the split of authority). This Court should not follow the decisions holding that an association is not required to identify a member by name because those decisions do not reconcile with the Supreme Court's clear statement in *Summers* that associations must make "specific allegations establishing that at least one *identified member*" has standing. 555 U.S. at 498 (emphasis added). The Second Circuit's 2006 suggestion that it was not aware of any authority for "the proposition that an association must 'name names' in [the] complaint," *Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006) is no longer good law because the Supreme Court later "clarified in *Summers*, which was decided three years after *Bldg. & Constr. Trades Counsel*," that the individual members must be identified by name. *Fac. New York Univ.*, 2020 U.S. Dist. LEXIS 56187, at *13 (S.D.N.Y. Mar. 31, 2020) (collecting cases that have relied upon *Summers*), *aff'd*, 11 F.4th 68, 76 (2d Cir. 2021).

Three of the nine Plaintiffs—Associated Builders and Contractors ("ABC"), Coalition for a Democratic Workplace ("CDW"), and National Retail Federation ("NRF")—do not distinctly allege that any of their members are located in Connecticut. *Compl.*, ¶¶ 11, 13, 18. Those Plaintiffs lack standing because their members would not be subject to § 31-51q. They also lack standing because, as with other Plaintiffs discussed in the following paragraphs, they either fail to allege any injury at all or do so in purely conclusory terms.

Four other Plaintiffs—Chamber of Commerce of the United States of America ("Chamber of Commerce"), Connecticut Retail Merchants Association ("CRMA"), National Association of Home Builders ("NAHB"), and National Federation of Independent Business ("NFIB")—make no attempt to allege any injury to their members beyond CRMA's conclusory allegation that their members "will be impacted" by § 31-51q. *Id.*, ¶¶ 10, 15, 16, 17. That kind of conclusory assertion is wholly insufficient to establish standing. *See We the Patriots USA, Inc.*, 579 F. Supp. 3d at 320 (allegation that associations' members would be "affected by" an amendment to a statute was insufficient to establish standing); *see also United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 688-89 (1973) (allegation that plaintiff "could be affected by" challenged action was insufficient to confer standing).

The remaining two Plaintiffs—Associated Builders and Contractors of Connecticut ("ABC CT") and Connecticut Business & Industry Association ("CBIA")— allege that their members' speech have been chilled by § 31-51q. *Compl.*, ¶¶ 12, 14,

20.  But "[a] plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 689; *see also Conn. Bar Ass'n v. United States*, 620 F.3d 81, 90 n.12 (2d Cir. 2020).  And courts are especially "reluctant" to endorse theories of standing where the threat of future enforcement depends upon "guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 413.  Plaintiffs would have to show, "at the least," that those independent decisionmakers "will likely react in predictable ways." *California v. Texas*, 141 S. Ct. 2104, 2117 (2021).

Neither ABC CT nor CBIA has met their burden there.  ABC CT alleges, without any factual support, that its members "are chilled" by § 31-51q in exercising free speech rights.  *Compl.*, ¶ 12.  That kind of conclusory allegation is wholly insufficient to establish standing.  *See Sowell v. Tinley Renehan & Dost, LLP*, 807 F. App'x 115, 119 (2d Cir. 2020) (Summary Order) ("plaintiff's conclusory assertion [of] a chilling effect on her First Amendment rights is not sufficient to establish injury in fact"); *see also Treiber v. Aspen Dental Mgmt.*, 635 F. App'x 1, 3 (2d Cir. 2016) (Summary Order) ("because the allegation is wholly conclusory and unsupported by any facts, it is insufficient to support standing").

Similarly, CBIA alleges that it "believes" § 31-51q exposes it and its members to liability "based on any meetings and communications concerning political issues that [Plaintiff] and its member companies conduct or issue in the future," and that Plaintiff "believes" that it and its members must therefore "refrain" from such

meetings/communications in the future.  *Id.*, ¶ 20.  CBIA alleges nothing more than an entirely subjective fear of future enforcement.  In fact, this supposed fear appears to be entirely unfounded.  There is no reason for CBIA to believe that § 31-51q prohibits its members from having "meetings and communications concerning political issues."  The statute prohibits employers from firing or disciplining employees for refusing to attend or listen to meetings and communication about political and religious matters, or threatening to do so. It does not prohibit the meetings and communications themselves.  CBIA has failed to allege that any of its members has an intention to engage in conduct actually prohibited by § 31-51q.  Misplaced fears do not establish standing.  *See Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (fear of enforcement must be "well-founded" to confer standing); *Cerame v. Bowler*, 2022 U.S. Dist. LEXIS 154801, at *20-21 (D. Conn. Aug. 29, 2022) (Thompson, J.) (plaintiff lacked standing where speech alleged to have been chilled likely was not prohibited by the law being challenged).

Moreover, even if CBIA's members had alleged that they intended to engage in conduct prohibited by § 31-51q, they would still lack standing.  The numerous discretionary decisions that would need to occur before DOL levied civil penalties against them—as well as the fact that DOL has no history of ever investigating alleged violations of § 31-51q—would render any fear of future enforcement speculative and conjectural, rather than actual and imminent.  *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 689.

Accordingly, Plaintiffs all lack associational standing to sue on behalf of their members.

###        2.        Plaintiffs lack organizational standing.

Organizational standing is the sole remaining basis available for Plaintiffs to invoke this Court's jurisdiction.  As noted above, Plaintiffs do not assert organizational standing in their Complaint.  That warrants dismissal. *Nnebe v. Daus*, 644 F.3d at 156.

Even if this Court were inclined to overlook Plaintiffs' failure to assert organizational standing (it should not), there is no factual basis for organizational standing in the Complaint.  Plaintiffs cannot credibly plead concrete or imminent injury in fact because they do not allege that they are employers subject to enforcement under § 31-51q.  Nor can Plaintiffs' engagement in litigation and public policy debate on issues that affect their members support organizational standing.

To establish "organizational standing," Plaintiffs "must meet the same standing test that applies to individuals." *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998)) (quotations and alteration omitted).  "Like an individual plaintiff, an organization must show actual or threatened injury in fact that is 'fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision.'" *NRA of America v. Cuomo*, 480 F. Sup. 3d 404, 414 (N.D.N.Y. 2020) (quoting *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993)).  The injury must be "concrete and particularized and

actual or imminent, not conjectural or hypothetical." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 129 (2d Cir. 2020).  The speculative fear of a hypothetical injury does not constitute an injury in fact.  *Clapper*, 568 U.S. at 417–18.

It warrants repeating that Plaintiffs do not allege any employer/employee relationship that would subject them to an action and potential injury for an alleged violation of § 31-51q.  Section 31-51q only applies to employers.  *Mercer v. Schriro*, 337 F. Sup. 3d 109, 140–41 (D. Conn. 2018); *Wydra Dec.*, ¶ 22-23; *Varley*, 158 Conn. App. at 499.  Thus, P.A. 22-24 does not "expos[e] [Plaintiffs] to legal risk, including liability, costs, and attorneys' fees," as Plaintiffs suggest.  *Compl.*, ¶ 20.  Plaintiffs face no legal risk whatsoever from enforcement—not concrete, actual, imminent, not even hypothetical or conjectural, based on the plain language of the statute—and cannot rely on that assertion to claim injury for standing purposes.

CBIA's claim that it "has held meetings with and provided written and other communications to employees about political issues," *Compl.*, ¶ 20, fails to establish that CBIA could be subject to a § 31-51q action because it remains unclear whose employees CBIA engages with.  CBIA's allegation obscures the respective roles of CBIA, its member companies, and employees.  The distinction matters because only employers are subject to an action under § 31-51q.  *Wydra Dec.,* ¶ 22-23.  CBIA does not affirmatively and plausibly allege it has its own employees and CBIA faces no threat of enforcement for holding meetings with other entities' employees.

Even if this Court somehow construed the Complaint to allege that CBIA holds meetings with its own employees, there is still no threat of enforcement.  CBIA alleges

that it holds meetings, communicates about political issues, and requires employees to attend the meetings. *Compl.* ¶ 20. But § 31-51q permits those communications, particularly to the extent they convey information "necessary for such employees to perform their job duties." Conn. Gen. Stat. § 31-51q(c)(2). It only prohibits discharge, discipline, or threats.

Plaintiffs also fail to demonstrate standing through their allegations about litigation and advocacy. Plaintiffs allege that they "initiate litigation on its members' behalf," "file amicus curiae briefs," and "promote and protect the rights of [their] members to own, operate, and grow their businesses." *Comp.,* ¶¶ 10, 14, 17. Nothing in § 31-51q prevents Plaintiffs from continuing to engage in those activities. Nothing prevents them from voicing their political and religious views or holding meetings to express those views. Section 31-51q only prohibits discipline and the threat of discipline, period full stop.

Plaintiffs' activism on behalf of their employer members, without some material burden on an established core activity, does not give rise to a legal injury. The Second Circuit has "reject[ed] such an expansive concept of organizational injury," and explained that "where, as here, an organization is not directly regulated by a challenged law or regulation, it cannot establish 'perceptible impairment' absent an involuntary material burden on its established core activities. In other words, the challenged law or regulation must impose a cost (e.g., in time, money, or danger) that adversely affects one of the activities the organization regularly conducted (prior to

the challenged act) in pursuit of its organizational mission." *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 173-74 (2d Cir. 2021) (footnotes omitted).

In *Connecticut Parents Union*, a non-profit activist group formed with the purpose of "protect[ing] . . . children's educational rights" challenged a state policy requiring that Connecticut magnet schools "admit at last 25% non-Black and non-Hispanic students." *Id.*, 171. The Second Circuit concluded that the plaintiff's purported injuries from "host[ing] community events, information sessions, bus tours, and other events in order to educate the public" and "lead[ing] legislative-reform efforts to repeal the racial quota," which "divert[ed] resources away from other activities" did not confer organizational standing. *Id.*, 171, 173. The plaintiff failed to claim a perceptible impairment from the challenged policy and therefore lacked standing and the court dismissed its claims. *Id.* Voluntary activism opposing a policy was not enough. *Id.*

Plaintiffs in this case make an even weaker argument for standing. They fail to identify any barrier to their advocacy and "fail[] to identify any restrictions on [their] ability to perform the core activities" that they pursued prior to the 2022 amendments. *Id.*, at 175. CBIA can continue to present to employees about political issues without impediment. *Wydra Dec.,* ¶ 23. Even employers subject to § 31-51q may continue conducting meetings discussing political matters or any other issue. *Wydra    Dec.*,    ¶    24.    Thus,    Plaintiffs    have    not    claimed "*involuntary* and *material* impacts on *core activities* by which the[ir] organizational mission[s] has historically been carried out" after § 31-51q was amended. *Connecticut*

*Parents Union,* 8 F.4th at 175 (emphasis in original).  In fact, they have not plausibly alleged an impact on any of their activities at all.  The action should be dismissed.

### B.    Plaintiffs allege an injury that is conjectural and speculative and thus not ripe.

Plaintiffs claim injuries from a statute that  has apparently never been enforced.  *Wydra Dec.*, ¶¶ 20-21.  Plaintiffs' predictions that it would be enforced against them rest largely on speculation about the discretionary actions of third parties.  As such, Plaintiffs' "claims are not constitutionally ripe." *Lacewell v. Office of the Comptroller of the Currency*, 999 F.3d 130, 149 (2d Cir. 2021).  This Court should reject Plaintiffs' invitation to entangle itself "'in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur.'"  *Id.*, 150 (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013)).  Plaintiffs' claimed injuries are "conjectural or hypothetical" and not "actual or imminent," *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d at 129 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)), and the unripe Complaint should be dismissed.

"[T]his Court has subject matter jurisdiction only over cases that are ripe for adjudication. . . .  Ripeness is peculiarly a question of timing and the doctrine prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Philadelphia Indemnity Ins. Co. v. Enterprise Builders*, 520 F. Sup. 3d 156, 160 (D. Conn. 2021) (citations omitted; quotation marks omitted).  "[T]o say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual

or imminent,' but instead 'conjectural or hypothetical.'" *National Org. for Marriage,*

*Inc.* v. *Walsh*, 714 F.3d at 688.  Thus, even in the First Amendment context, "[a] party

facing prospective injury has standing to sue [only] where the threatened injury is

real, immediate, and direct." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734

(2008).  Further, the "[t]hreatened injury must be certainly impending to constitute

injury in fact, and [a]llegations of possible future injury are not sufficient." *Clapper*,

568 U.S. at 409 (quotation marks omitted; emphasis omitted). "[A]n organization's

abstract concern with a subject that could be affected by an adjudication does not

substitute for the concrete injury required by Art. III." *Ragin*, 6 F.3d at 905 (quoting

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)).

     To the extent that Plaintiffs attempt to allege organizational standing, it would

most commonly be from DOL potentially receiving an employee complaint,

investigating, concluding that a violation of § 31-51q has occurred based on the facts

borne out by the investigation, and then levying civil fines.  That injury is "not 'actual

or imminent,' but instead 'conjectural or hypothetical.'" *National Organization for*

*Marriage, Inc.*, 714 F.3d at 688.

     If civil penalties were ever levied for violating § 31-51q, it could only be against

employers and not against Plaintiffs as associations. *Wydra Dec.*, ¶ 22-23.  Because

Plaintiffs "are not . . . the object of the government action or inaction [t]he[y]

challenge[], standing is not precluded, but it is ordinarily 'substantially more difficult'

to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (*quoting*, inter

alia, *Warth v. Seldin*, 422 U.S. 490, 505 (1975)).  Making future enforcement more

speculative, DOL has, to its knowledge, never received a complaint implicating, never pursued an investigation arising from, and never levied civil penalties for violations of § 31-51q since the statute's enactment in 1983. *Wydra Dec.*, ¶¶ 19-20.

Future enforcement of § 31-51q continues to rest on speculation following the enactment of the 2022 amendments. DOL could not enforce § 31-51q absent a chain of historically unprecedented contingencies. The issue would have to be brought to DOL's attention, generally by an employee complaint. *Wydra Dec.*, ¶ 16-17. An investigation could still not commence unless a Standards Division agent deemed the complaint both credible and within the Division's jurisdiction. *Id.*, ¶ 17. Even then, an investigating agent would need to demonstrate that an employer actually violated § 31-51q in order for DOL to impose civil fines of up to $300 per violation pursuant to § 31-69a.[3] *Id.*, ¶ 18. Actual enforcement would require a quantum of evidence supporting the various elements of a violation and the absence of multiple applicable exemptions. The complete lack of factual context from an actual enforcement action makes these claims premature. This Court may not "declar[e] the meaning of the law in a vacuum" and should refrain "from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003).

Setting aside historical enforcement, enforcement after the 2022 amendments continues to remain speculative since recovery is now limited to lost wages and civil

---

[3] Even if all the unprecedented prerequisites were met, Plaintiffs fail to allege that their organizational activities in the past implicated § 31-51q, or would implicate it going forward.

penalties that the State collects, rather than the employee.  The prospect that § 31-51q will ever be enforced against Plaintiffs' members "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).  The proper time for Plaintiffs to challenge DOL's enforcement of 31-51q would be if there was "actual or imminent" enforcement of that statute for the first time in its forty-year history. *Moya*, 975 F.3d at 129.  Plaintiffs' claim should be dismissed because it is not ripe for adjudication.

**C.**   **The Eleventh Amendment bars this action in its entirety because Plaintiffs fail to allege a credible threat of enforcement against them that warrants application of the narrow *Ex parte Young* exception**

Even if Plaintiffs overcome the standing hurdles, they cannot overcome the Eleventh Amendment hurdle because the facts alleged do not warrant application of the narrow *Ex parte Young* exception.  Unconsenting states are immune from suits brought in federal courts.  "That doctrine recognizes that the states entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant." *Silva v. Farrish*, 47 F.4th 78, 84 (2d. Cir. 2022) (citation and quotation marks omitted). *Ex parte Young* provides "a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 142 S. Ct. at 532 (citation omitted).

A straightforward application of the *Ex parte Young* requirements disposes of two parts of this action: 1) the claims against DOL; and 2) the attempt to enjoin the private cause of action.  First, the claims against DOL fail because DOL is a state

*entity*, not a state *official*, and therefore cannot be sued under *Ex parte Young*. *See Kelly v. New York State Unified Court Sys.*, 2022 U.S. App. LEXIS 11316, at *4 (2d Cir. April 25, 2022) (Summary Order); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (noting that the *Ex parte Young* "exception is narrow" and "has no application in suits against the States and their agencies, which are barred regardless of the relief sought").

Second, Plaintiffs cannot enjoin § 31-51q from being enforced by all employees in Connecticut. The statute creates a private cause of action enforceable only by employees through individual lawsuits. There are millions of employees in Connecticut working for hundreds of thousands of businesses. *Wydra Dec.*, ¶ 29. Enjoining § 31-51q would therefore effectively be an injunction against "the world at large [and would] purport to enjoin the challenged law[] [itself]," which courts cannot do. *Whole Woman's Health*, 142 S. Ct. at 535 (citations and internal quotation marks omitted).

The Eleventh Amendment also bars Plaintiffs' claims to the extent Plaintiffs are attempting to enjoin the Commissioner and Attorney General from seeking civil penalties under § 31-69a based upon violations of § 31-51q. As to those defendants, courts conduct a "straightforward inquiry" to determine whether *Ex parte Young* applies: whether the Complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective. *Silva v. Farrish*, 47 F.4th at 84. Because Plaintiffs are admittedly bringing a pre-enforcement challenge, "it is not enough that [they] feel inhibited or chill[ed] by the abstract possibility of an

25

enforcement action against them. . . .  Rather, they must show at least a credible threat of [enforcement] against them." *Whole Woman's Health*, 142 S. Ct. at 536 (citation and quotation marks omitted).

The statutory scheme and Wydra's declaration demonstrate that Plaintiffs fail to establish a credible threat of enforcement by the Commissioner or the Attorney General.  Instead, enforcement remains "a series of hypotheticals" too speculative to warrant application of *Ex parte Young*. *Whole Woman's Health*, 142 S. Ct. at 534.  The Court in *Whole Woman's Health* agreed in principle that a plaintiff "must show at least a credible threat of such an action against them," and that merely being "chilled by the abstract possibility of an enforcement action" does not suffice to maintain a suit consistent with *Ex parte Young* and Article III precedents. *Id.* at 537 (internal quotation marks and alterations omitted).  Based on the record before this Court, Plaintiffs fail to demonstrate more than an abstract possibility that DOL would initiate its own investigation to seek a civil penalty under § 31-69a. *See Cerame v. Lamont*, Docket No. 3:21cv1508 (JCH), 2022 U.S. Dist. LEXIS 128493, at *3 n.3 (D. Conn. July 20, 2022).

DOL's customary reliance on employees to bring a complaint that would trigger an investigation renders the possibility of enforcement even more abstract.   It requires, in the first instance, an employee to decide to file a formal complaint with DOL.  *See Kelly v. New York State Civil Service Commission*, 2015 U.S. Dist. LEXIS 27443, at *9 (S.D.N.Y. Jan. 26, 2015) (holding that members of a state civil service commission were not proper *Ex parte Young* defendants where the operative decisions

were made by local commissions).   There may be little incentive for an employee to do this, as evidenced by the fact that DOL is unaware of any complaint being filed under § 31-51q, because any civil penalties go to the State rather than to the employee.  Even when that happens, however, as detailed above, it is not always the case that the complaint will result in a civil penalty.  Additional contingencies would all need to occur for a civil penalty to actually be levied.  Section 31-51q has been in place for almost 40 years and has never been enforced either by the Commissioner or the Attorney General.

And even if the Commissioner ever sought to recover a civil penalty or referred an unpaid civil penalty to the Attorney General, the penalty applies only to employers—not associations of employers—that have been found to have disciplined or threatened to discipline their employee.  Plaintiffs' complaint simply does not place Plaintiffs within the scope of enforcement that warrants application of *Ex parte Young*.  While Plaintiffs may prefer to invoke this Court's jurisdiction and obtain pre-enforcement federal review of a state statute, plaintiffs "are not always able to pick and choose the timing and preferred forum for their arguments."  *Whole Woman's Health*, 142 S. Ct. at 538.  Eleventh Amendment immunity bars this action.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss in its entirety.

DEFENDANTS,
DANTÉ BARTOLOMEO, ET AL,

WILLIAM TONG
ATTORNEY GENERAL

BY:    /s/ Timothy J. Holzman
        Timothy J. Holzman (ct30420)
        Emily Adams Gait (ct31186)
        Benjamin Abrams (ct29986)
        Assistant Attorneys General
        Office of the Attorney General
        165 Capitol Avenue, 5th Floor
        Tel.:  (860) 808-5212
        Fax:  (860) 808-5347
        Timothy.holzman@ct.gov
        Emily.gait@ct.gov
        Benjamin.abrams@ct.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2022, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>*/s/ Timothy J. Holzman*</u>
Timothy J. Holzman
Assistant Attorney General