UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, <br>    *Plaintiffs*, <br><br> v. <br><br> DANTE BARTOLOMEO, *in his official capacity as the Commissioner of the Connecticut Department of Labor*, *et al.*, <br>    *Defendants*. | CASE NO. 3:22-CV-1373 (KAD) <br><br><br><br><br> FEBRUARY 13, 2026 |

**MEMORANDUM OF DECISION**
RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 97);
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT (ECF NO. 100)

Kari A. Dooley, United States District Judge:

In this civil action, Plaintiffs, a coalition of Connecticut-based and national business and trade organizations, assert their federal constitutional and statutory rights, and those of their members, and seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, with respect to Conn. Gen. Stat. § 31-51q, *et seq.* ("Section 31-51q"). Specifically, Plaintiffs assert that recently enacted subsections (a) and (b)(2) to Section 31-51q (hereinafter, the "2022 Amendments") violate the First and Fourteenth Amendments to the United States Constitution by impermissibly regulating the content of employers' communications with their employees and thereby chilling employers' protected speech. Plaintiffs further assert that the 2022 Amendments are preempted by the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq*. (the "NLRA").

Now pending before the Court are Plaintiffs' Motion for Summary Judgment; and Defendants' Cross-Motion for Summary Judgment. ECF Nos. 97, 100. For the reasons that follow, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendants' Cross-Motion for

Summary Judgment is **GRANTED** to the extent it challenges Plaintiff CBIA's standing to assert these claims.

**Facts**

The relevant facts are taken from the Complaint, the parties' respective Local Rule 56(a)1 Statements and attached exhibits, as well as the parties' Local Rule 56(a)2 Statements and attached exhibits.  All of the facts set forth herein are undisputed unless otherwise indicated.[1]

Section 31-51q

Broadly, and subject to limitations not at issue here, Section 31-51q prohibits the discipline or discharge of an employee on account of the exercise by such employee of various constitutional rights, including freedom of speech.  *See generally* Conn. Gen. Stat. § 31-51q.  On February 23, 2022, the Connecticut General Assembly (the "Assembly") considered amending Section 31-51q to regulate employers' communications with their employees.[2]  *See* Compl., ECF No. 1 at ¶ 26 (citing Senate Bill 163, Reg. Session (Conn. 2022)).  On May 17, 2022, Senate Bill 163, which added subsections (a) and (b)(2) to Section 31-51q, was signed into law.

Relevant here, as amended, Section 31-51q(b) provides that "any employer, including the state and any instrumentality or political subdivision thereof, who subjects or threatens to subject any employee to discipline or discharge on account of … (2) such employee's refusal to (A) attend an employer-sponsored meeting with the employer or its agent, representative or designee, the primary purpose of which is to communicate the employer's opinion concerning religious or political matters, or (B) listen to speech or view communications, the primary purpose of which is

---

[1] The Court assumes the parties' familiarity with the facts and circumstances underlying this litigation.  As such, and because the Court is herein granting Defendants' Motion for Summary Judgment on the grounds that CBIA lacks organizational standing, the Court limits its discussion of the facts in this case to those relevant to the issue of standing.

[2] As discussed herein, Defendants disagree that the legislation regulates "employers' communications," and assert that the legislation, instead, regulates conduct, to wit, the imposition of discipline.

to communicate the employer's opinion concerning religious or political matters, shall be liable." Conn. Gen. Stat. § 31-51q(b)(2). Section 31-51q(a) defines "political matters" as "matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulation and the decision to join or support any political party or political, civic, community, fraternal or labor organization." Conn. Gen. Stat. § 31-51q(a)(1). Pursuant to Section 31-51q(c)(2), "[n]othing in this section shall prohibit . . . an employer or its agent, representative or designee from communicating to its employees any information that is necessary for such employees to perform their job duties . . ."

The 2022 Amendments are enforceable through: (a) employees suing for damages if they claim to have suffered a disciplinary action in violation of the statute; or (b) the Commissioner of Labor or the Attorney General seeking statutory civil penalties from employers for violating this provision. *See* Conn. Gen. Stat. §§ 31-51q(b), 31-69a. Section 31-69a authorizes the Commissioner of Labor to investigate violations of state labor laws (including Section 31-51q), seek penalties or fines from employers who violate them, and charge employers for employees' unemployment benefits related to such violations.

CBIA

Plaintiff CBIA is Connecticut's largest business association, and represents thousands of members and the interests of the Connecticut business community. Plaintiffs' Local Rule 56(a)1 Statement of Material Facts ("Pls. 56(a)1") at ¶ 1. To accomplish its mission of advocating for a better business climate, growing the economy, and creating opportunities for all residents, CBIA engages in advocacy, lobbying, and communications of those lobbying and advocacy efforts. *See id.* at ¶¶ 2–3. CBIA wants all of its employees to be aware of CBIA's institutional opinions and the steps being taken to fulfill its mission, and as such, CBIA informs employees about its lobbying

3

and advocacy efforts by providing public policy updates during its periodic, mandatory all-staff meetings. *Id.* at ¶¶ 5–6. Every CBIA employee must attend these meetings, unless that employee has a pre-approved excused absence. *Id.* at ¶ 7. CBIA has reprimanded employees in the past for failing to attend an all-staff meeting. *Id.* at ¶ 8.

Prior to the 2022 Amendments, CBIA's mandatory all-staff meetings were the primary means of ensuring that all CBIA employees were aware of CBIA's ongoing advocacy and lobbying efforts. *Id.* at ¶ 11. Indeed, such meetings would usually include the presentation of a "Policy Update" including CBIA's latest institutional opinions on pending legislation, regulatory matters, candidates for office, etc. *Id.* at ¶ 12. Though CBIA still holds mandatory, all-staff meetings, following the 2022 Amendments, it removed its public-policy updates from the meeting agendas. *Id.* at ¶ 13. CBIA now refrains from discussing "political matters" at its mandatory all-staff meetings, out of a concern that doing so would subject it to liability under Section 31-51q.[3] *See id.* at ¶ 14.

The DOL and Enforcement of Section 31-51q

Tom Wydra was the Director of the Connecticut Department of Labor ("DOL") Wage and Workplace Standards Division (the "Standards Division"), which is responsible for investigating alleged violations of labor laws and, where appropriate, enforcing wage and workplace standards laws, including Section 31-51q.[4] Defs. 56(a)1 at ¶¶ 45–46. Under current guidance, the DOL would not initiate an investigation into potential violations of Section 31-51q unless an employee submits a formal complaint to the DOL, or facts and circumstances warranting an investigation are brought to the DOL's attention. *See id.* at ¶ 37. Since 2004, no individual member of the

---

[3] Defendants dispute that CBIA's speech has been "chilled" by Section 31-51q. Nevertheless, such factual dispute has no bearing on the Court's decision herein.

[4] On November 15, 2024, Defendants filed a Notice indicating that, effective that same day, Thomas Wydra had left his position with the DOL. *See* ECF No. 114.

public has filed a complaint with the Standards Division alleging a violation of Section 31-51q, and the DOL has never investigated any employer for an alleged violation of Section 31-51q, imposed a resulting civil penalty, or otherwise taken any other action against any employer for such alleged violations. *See id.* at ¶¶ 40–44.

On May 24, 2024, Mr. Wydra, whose responsibilities as Director of the Standards Division included, *inter alia*, reviewing cases to determine investigative actions and establishing investigative priorities, swore, under penalty of perjury, that it is the DOL's position that CBIA's intended acts—*i.e.*, conducting mandatory, all-staff meetings wherein public-policy updates are presented—do not violate Section 31-51q. *See id.* at ¶¶ 46, 52 (citing Declaration of Thomas Wydra ("Wydra Decl."), ECF No. 100-6). Indeed, Mr. Wydra further declared that the DOL's position is that, because CBIA is specifically in the business of political advocacy and its mission is to engage in advocacy, CBIA's discussion of its policy positions at mandatory all-staff meetings does not violate Section 31-51q, and that therefore, the DOL will not seek to enforce Section 31-51q against CBIA for doing so, even if CBIA takes adverse action against an employee who refuses to attend such meetings. *See id.* at ¶¶ 53–55. Even more specifically, Mr. Wydra declared that, in the DOL's view, CBIA communicating its official policy position against unionization is exempt from enforcement under Section 31-51q(c)(2).[5] *Id.* at. ¶ 61.

---

[5] Plaintiffs generally object to the purported statements of fact arising from Mr. Wydra's declaration, on the basis that they are merely legal conclusions as to the meaning and scope of Section 31-51q. Plaintiffs further dispute that a DOL employee, rather than the courts, can determine the meaning and scope of Section 31-51q, and in any event argue that "Defendants cannot announce new regulations or interpretations of statutes in a litigation-driven declaration rather than through an agency rule published after proper notice and comment." *See generally* Pls. 56(a)2. To be clear, where, as here, such statements are uncontroverted by the record evidence, sworn declarations made based on personal knowledge can—and often do—form the basis of undisputed facts for summary judgment purposes. *See* Fed. R. Civ. P. 56(c)2. Moreover, the Court is not persuaded that the sworn statements made by Mr. Wydra and relied upon herein constitute legal conclusions which might otherwise be inadmissible on summary judgment. Though Mr. Wydra's statements may derive from the DOL's legal interpretation of Section 31-51q, the statements themselves—which relate to the DOL's position vis-à-vis enforcement of Section 31-51q against CBIA—are not legal conclusions. Indeed, as discussed in more detail below, for standing purposes, the pertinent inquiry is whether CBIA faces a credible threat of enforcement. It is of no consequence that the DOL's disavowal, through Mr. Wydra, of its intention to enforce Section 31-51q against CBIA, may be based on what Plaintiffs perceive as a misreading of the statute.

CBIA has a working relationship with the DOL, and has previously, on occasion, sought advice from the DOL on how labor laws are being interpreted and apply to businesses. *See id.* at ¶¶ 71, 73, 76. CBIA did not reach out to DOL to inquire whether its intended conduct is prohibited by Section 31-51q. *Id.* at ¶ 78.

**Procedural History**

On November 1, 2022, Plaintiffs filed the operative Complaint pursuant to Section 1983, alleging that Section 31-51q, as amended by the 2022 Amendments: (1) violates the First and Fourteenth Amendments; and (2) is preempted by the NLRA. *See* Compl., ECF No. 1. Through the Complaint, Plaintiffs sought a declaration that the 2022 Amendments are unconstitutional and preempted by the NLRA, as well as an injunction against Defendants' enforcement of the 2022 Amendments against Plaintiffs and their members. *See id.* at 15.

On December 27, 2022, Defendants filed a Motion to Dismiss the Complaint. ECF No. 36. On June 28, 2023, following oral argument, the Court granted in part and denied in part Defendants' Motion to Dismiss. *See* ECF No. 63. The Court, *inter alia*, concluded that Plaintiffs had adequately alleged CBIA's organizational standing to obtain relief for all Plaintiffs. On April 26, 2024, Plaintiffs filed a Motion for Summary Judgment. *See* Pls. MSJ, ECF No. 97. On May 24, 2024, Defendants' collectively filed their Cross-Motion for Summary Judgment and their opposition to Plaintiffs' Motion for Summary Judgment. *See* Defs. MSJ, ECF No. 100. On June 21, 2024, Plaintiffs filed a combined opposition to Defendants' Cross-Motion for Summary Judgment, and reply brief in further support of their own Motion for Summary Judgment. Pls. Opp., ECF No. 102; Pls. Reply, ECF No. 103. On July 15, 2024, Defendants filed a reply brief in further support of their Cross-Motion for Summary Judgment. Defs. Reply, ECF No. 108.

6

The Court held oral argument on the parties' Motions for Summary Judgment on November 18, 2024, after which the Court took the parties' Motions under advisement. *See* ECF No. 115. Plaintiffs filed Notices of Supplemental Authority on November 14, 2024 and October 3, 2025, to which Defendants filed responses on November 15, 2024 and October 10, 2025, respectively. *See* ECF Nos. 112, 113, 122, 125. Defendants filed a Notice of Supplemental Authorities on August 8, 2025, to which Plaintiffs filed a response on August 19, 2025. *See* ECF Nos. 120–121.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets

this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). It cannot "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). Nor can it rely on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in its favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

**Discussion**

Though the parties have filed competing Motions for Summary Judgment, each raising a panoply of supporting arguments, both Motions largely center around three core issues: (1) CBIA's standing; (2) the facial constitutionality of Section 31-51q, and in particular, the 2022 Amendments; and (3) whether Section 31-51q, as amended, is preempted by NLRA. The Court will address Defendants' Motion for Summary Judgment first. Defendants argue that they are entitled to summary judgment because: (a) CBIA cannot establish a pre-enforcement injury, and therefore lacks organizational standing to assert its claim on behalf of all Plaintiffs; (b) Section 31-51q does not run afoul of the First Amendment principally because it does not regulate speech, and is otherwise not unconstitutional in all of its applications; and (c) Section 31-51q is not preempted by the NLRA, under either *Garmon* or *Machinists* preemption. In response, Plaintiffs argue that: (i) CBIA has standing to challenge Section 31-51q; (ii) Section 31-51q violates the First and Fourteenth Amendments because it regulates employers' conduct based on the content and viewpoint of their speech; and otherwise fails strict scrutiny; and (iii) Section 31-51q is preempted by the NLRA, under both *Garmon* and *Machinists* preemption. As set forth herein, the

Court finds that CBIA lacks standing, and for that reason alone, Defendants' Motion for Summary Judgment is **GRANTED**.

Article III Standing[6]

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. The doctrine of standing gives meaning to these constitutional limits by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) ("Standing is a federal jurisdictional question determining the power of the court to entertain the suit.") (internal quotations marks omitted). It is well-settled that, to establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likelihood" that the injury "will be redressed by a favorable decision." *See Lujan*, 504 U.S. at 560–561. "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.' An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Susan B. Anthony List v.*

---

[6] As discussed, the Court previously denied Defendants' Motion to Dismiss, holding that CBIA had plausibly alleged organizational standing to bring a pre-enforcement challenge to Section 31-51q. *See* Transcript of Oral Argument on 6/28/23, ECF No. 64 at 46:9–46:11. The decision was premised entirely on Plaintiffs' allegations and whether those allegations, if proven, would establish standing. *See generally id.* It was clear at the time that this issue would be revisited on summary judgment after discovery and development of the record. And as anticipated, the procedural and factual circumstances in this case have since changed. First, CBIA's burden of establishing standing is higher now, at the summary judgment stage. *See Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("A plaintiff's burden to demonstrate standing increases over the course of litigation."); *see also Lujan*, 504 U.S. at 561. Second, since the Court's ruling on Defendants' Motion to Dismiss, the DOL has unequivocally disavowed its intention to enforce Section 31-51q against CBIA.

*Driehaus*, 573 U.S. 149, 158 (2014).  An organization, such as CBIA, may bring a Section 1983 suit on behalf of its members "so long as it can independently satisfy the requirements of Article III standing."  *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011).

This case involves a pre-enforcement challenge to the constitutionality of Section 31-51q under the First Amendment.  It is well-established that a plaintiff need not first "expose [it]self to liability before bringing suit to challenge . . . the constitutionality of a law threatened to be enforced."  *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (citation omitted).  As such, the Second Circuit has observed that pre-enforcement claims are viewed "under somewhat relaxed standing and ripeness rules."  *National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).  Indeed, when a "plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, that plaintiff should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."  *Id.* at 689–90.  Stated differently, a plaintiff can bring a pre-enforcement challenge if it demonstrates "(1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) that the intended conduct is 'proscribed by' the challenged law; and (3) that 'there exists a credible threat of prosecution thereunder.'"  *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023).  The injury-in-fact requirements are relaxed in pre-enforcement cases because plaintiffs contesting statutes or regulations on First Amendment grounds "face an unattractive set of options if they are barred from bringing a facial challenge: refraining from activity they believe the First Amendment protects, or risk[ing] civil or criminal penalties for violating the challenged law." *Walsh*, 714 F.3d at 689; *see also Driehaus*, 573 U.S. at 165 ("[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review.").

Nevertheless, "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (citing *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

Defendants contest CBIA's organizational standing to assert its pre-enforcement claim on the grounds that: (1) Section 31-51q does not proscribe CBIA's intended conduct; and in any event, CBIA is in the business of policy advocacy and therefore, consistent with Section 31-51q(c)(2), CBIA can continue to hold its mandatory monthly meetings and discipline employees who do not attend; (2) CBIA has never had to retaliate against an employee, because no employee has ever refused to attend an "all-staff" meeting, and merely making a meeting mandatory is not considered retaliation; and (3) there is no credible threat of enforcement because the DOL has now sworn and guaranteed that no civil actions will be pursued against CBIA under Section 31-51q. *See* Defs. MSJ at 15–23. In response, Plaintiffs argue that CBIA's intended conduct—*i.e.*, holding mandatory all-staff meetings to share its institutional opinions on political matters, including unionization—is arguably proscribed by Section 31-51q; and that CBIA continues to face a credible threat of enforcement, notwithstanding the DOL's purported disavowal. *See* Pls. Opp. at 3–10. The Court agrees in part with Defendants, and concludes that CBIA's standing to assert its pre-enforcement claims is fatally extinguished by the DOL's unequivocal disavowal of any enforcement of Section 31-51q against CBIA.[7]

---

[7] While the parties have extensively briefed the issue of whether CBIA's intended conduct is arguably proscribed by Section 31-51q, CBIA's failure to demonstrate the existence of a credible threat of enforcement is alone fatal to its standing in this case. *See Vitagliano*, 71 F.4th at 136. And although the DOL disavowal is, at least in part, premised on an assessment that CBIA's conduct does not fall within the statute's prohibitions, the Court need not determine whether CBIA is an employer (or arguably so) whose conduct is proscribed by the statute.

11

*Credible Threat of Enforcement*

The Court turns first to whether CBIA faces a credible threat that Defendants, through the DOL, will enforce Section 31-51q against CBIA, if CBIA resumes its practice of conducting mandatory, all-staff meetings wherein public-policy updates including, *inter alia*, discussions regarding CBIA's position against unionization (or other political matters), are provided to all CBIA employees, under threat of discipline for non-attendance.

The Second Circuit has explained that the standard for "credible threat of prosecution is a 'quite forgiving' requirement that sets up only a 'low threshold' for a plaintiff to surmount." *Nastri v. Dykes*, No. 23-1023, 2024 WL 1338778, at *2 (2d Cir. Mar. 29, 2024) (citations omitted). Indeed, "[w]here a statute specifically proscribes conduct, the law of standing does 'not place the burden on the plaintiff to show an intent by the government to enforce the law against it. Rather, it [has] presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed.'" *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (quoting *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013)). "In other words, [the Second Circuit] presume[s] that a credible threat of enforcement exists, and require[s] the government to rebut that inference by disavowing its intent to enforce the statute, or by pointing to another reason to conclude that no such intent exists." *Nastri*, 2024 WL 1338778 at *2 (cleaned up) (citing *Tweed-New Haven Airport Auth.*, 930 F.3d at 71). While evidence of previous enforcement of the challenged statute "is, of course, relevant to assessing the credibility of an enforcement threat, . . . such evidence is [not] *necessary* to make out an injury in fact." *Vitagliano*, 71 F.4th at 139 (citing *Driehaus*, 573 U.S. at 164).

Here, even assuming that Section 31-51q proscribes CBIA's intended conduct, and that CBIA's resulting "self-censorship" was initially reasonable, it is nevertheless undisputed at this

12

juncture that DOL has no intention of pursuing any civil penalty against CBIA for such conduct, including for reprimanding or disciplining its employees for refusing to attend a mandatory, all-staff meeting. More specifically, on May 24, 2024, the Director of the DOL's Standards Division, Thomas Wydra, declared under penalty of perjury, that it is the DOL's position that CBIA's intended conduct does not violate Section 31-51q because CBIA, as an employer, falls outside the scope of the statute, and that therefore, the DOL will not seek to enforce Section 31-51q against CBIA for engaging in such conduct, even if CBIA takes adverse action against an employee who refuses to attend the mandatory, all-staff meetings. It is further undisputed that the Standards Division is responsible for investigating alleged violations and enforcing wage and workplace standards laws, including Section 31-51q. Thus, given the DOL's disavowal, the Court finds any threat of enforcement of Section 31-51q by Defendants against CBIA to be illusory, at best, and therefore, insufficient to establish Article III standing. *See Babbitt*, 442 U.S. at 298.

Notwithstanding, Plaintiffs counter that there is a presumption of enforcement in light of the recency of the 2022 Amendments. They assert that DOL's sworn disavowal is merely "cold comfort," and not, in fact, a "true disavowal," insofar as it is premised on the DOL's fundamental misreading of Section 31-51q. The Court is not persuaded.

It is correct that "in the absence of a disavowal by the government or another reason to conclude that no such intent [to enforce the statute] exist[s]," there is a presumption that the government will enforce a statute. *Vitagliano*, 71 F.4th at 138. Likewise, CBIA was, at least initially, entitled to a presumption of enforcement due to the recency of the 2022 Amendments. *See id.* at 138–39 (finding "no reason to doubt that the [defendant] will enforce its recently enacted law against those who violate its terms"). Nevertheless, as set forth above, such presumptions have now been rebutted by the DOL's explicit disavowal, the sort of which was entirely absent in

13

each of the cases relied upon by Plaintiffs. *See Nastri*, 2024 WL 1338778 at *2 ("Far from disavowing enforcement against [plaintiff], [defendant] . . . would take enforcement action if its officers found a person with an unauthorized firearm," in violation of the challenged regulation); *Antonyuk v. Chiumento*, 89 F.4th 271, 335 (2d Cir. 2023), *cert. granted, judgment vacated sub nom. Antonyuk v. James*, 144 S. Ct. 2709 (2024), *and reinstated in part by Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024) ("Far from disavowing prosecution of Plaintiffs, multiple Defendants have announced their intention to enforce the CCIA, and the Superintendent of State Police has warned that his department will have 'zero tolerance' for violations"); *Vitagliano*, 71 F.4th at 138 ("there is no indication that [defendant] has disavowed enforcement of the bubble zone restriction; to the contrary, when asked at oral argument, [defendant] declined to represent that county officials would not enforce the law."); *Silva v. Farrish*, 47 F.4th 78, 88 (2d Cir. 2022) ("The state has promulgated its fishing regulations and does not dispute that it would apply those regulations to the plaintiffs should they fish again without complying.").

Plaintiffs' efforts to undermine the significance of the DOL's disavowal fare no better. Plaintiffs first observe that Mr. Wydra's sworn declaration does not bind the decisions of future DOL Commissioners. *See* Pls. Opp. at 9. They liken the DOL's disavowal to a "strategic concession" of non-enforcement, and argue that Defendants cannot guarantee that CBIA will never face a civil penalty. *Id*. (citing *Picard v. Magliano*, 42 F.4th 89, 99 (2d Cir. 2022)). In this regard, Plaintiffs misapprehend the issue. When rebutting a presumption that there is a credible threat of enforcement, Defendants need only refute such inference by "disavowing [their] intent to enforce the statute," such that any fear of enforcement becomes "imaginary or wholly speculative." *See Babbitt*, 442 U.S. at 298; *Tweed-New Haven Airport Auth.*, 930 F.3d at 71. Defendants have done so here. Indeed, for standing purposes, the DOL's disavowal, by and

14

through Mr. Wydra as Director of the Standards Division, is sufficient to rebut any credible threat that Section 31-51q will be enforced against CBIA, and render any fear thereof entirely conjectural.[8] In fact, the Court observes that on November 15, 2024, Mr. Wydra left his position as Director of the Standards Division. *See* ECF No. 114. Yet, despite this change, Defendants, through counsel, have confirmed that Mr. Wydra's departure does not impact DOL's position on how it will and will not enforce Section 31-51q, and that Mr. Wydra's prior testimony remains the official position of the DOL. *See* ECF No. 114. This underscores the durability of the DOL's position on Section 31-51q, and its application (or lack thereof) to political advocacy organizations like CBIA. And indeed, the fact that the DOL's disavowal is rooted in its own interpretation of the statutory text supports the conclusion that its position on Section 31-51q is not based on the impulses, political beliefs, and/or policy prerogatives of the current Commissioner of Labor, Director of the Standards Division, and/or other DOL officials, but rather, on an application of Section 31-51q that is "based on objective and discernable standards," and a foundational belief that there is no legal basis to seek a civil penalty against CBIA for its intended conduct.[9] *See* Wydra Decl. at ¶ 27; *see also Blum v. Holder*, 744 F.3d 790, 798 (1st Cir. 2014) ("Particular weight

---

[8] The DOL's disavowal here is also distinct from the "strategic concessions" made by the government (and questioned by the Second Circuit) in *Picard*. In *Picard*, despite the view of the New York Attorney General ("NYAG") that plaintiff's intended conduct was not proscribed by the criminal statute at issue, the Second Circuit still expressed doubt over whether such view would provide meaningful protection to the plaintiff, who could still be arrested by local police who might be unaware of the NYAG's concessions as to the statute's inapplicability. *See* 42 F.4th at 99. Here, by contrast, the disavowal has come from the DOL itself, *i.e.*, the very authority responsible for enforcing the statute. Moreover, in both *Picard* and another case relied upon by Plaintiffs, *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000), the state simply argued (without evidentiary support) that the plaintiffs' intended conduct was not proscribed by the statute at issue, whereas here, Defendants have included a sworn statement reflecting the DOL's position that the statute does not apply to CBIA as well as a disavowal of enforcement against CBIA by the DOL for that reason. Indeed, Plaintiffs' argument that the disavowal is nothing more than a strategic exigency is supported only by Plaintiffs' cynicism.

[9] To be sure, if the DOL were to reverse course and retract its disavowal under the guidance of a new Commissioner of Labor, CBIA would likely face a credible threat of enforcement, and the requirements for standing might well be met under such circumstances. *See CIT Bank, N.A. v. Jach*, No. 15-CV-5814 (KAM), 2019 WL 1383850, at *8 (E.D.N.Y. Mar. 27, 2019) ("Standing is a fluid issue . . ."); *Wells Fargo Bank, N.A. v. Ullah*, No. 13-CV-485 (JPO), 2014 WL 2117243, at *3 (S.D.N.Y. May 21, 2014) ("[S]tanding may ebb and flow. A party without standing may later acquire it.").

15

must be given to the Government disavowal of any intention to prosecute on the basis of the Government's own interpretation of the statute.").

Lastly, the Court rejects Plaintiffs' argument that only the courts, not DOL employees, can determine whether conduct violated Section 31-51q.[10] Indeed, the Court agrees with Defendants that, for purposes of Article III standing, it is of no consequence which party has the most accurate legal interpretation of Section 31-51q. Rather, the pertinent question is whether CBIA's fear of enforcement is credible. And insofar as the DOL has explicitly indicated that it will not enforce Section 31-51q against CBIA for its intended conduct, in part because, in the DOL's view (even if misguided), the 2022 Amendments were "not intended to police the speech of advocacy groups about matters that are within, or even arguably within, the group's core area of advocacy," *see* Wydra Decl. at ¶ 32, Plaintiffs cannot establish that CBIA has a credible fear of enforcement.[11]

In light of all of the foregoing, the Court concludes that CBIA lacks standing to assert its pre-enforcement claim against Defendants. And having shown no credible threat of enforcement of Section 31-51q against CBIA, Plaintiffs likewise lack standing to bring a preemption challenge. *See Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*, No. 23-CV-7052 (SJB),

---

[10] The Court notes the irony of CBIA challenging the DOL's determination that its conduct is not proscribed by the statute, a determination, that CBIA should, at least in theory, welcome.

[11] Though perhaps not dispositive of the issue, CBIA's fear of enforcement under these circumstances is further undermined by its undisputed longstanding relationship with the DOL, whereby CBIA has historically relied on the DOL to provide guidance on the meaning, scope, and applicability of workplace standards and employment/labor laws. *See* Defs. 56(a)2 at ¶¶ 71, 73, 76. Indeed, it strains credulity for CBIA to claim a fear of enforcement of Section 31-51q when such purported fear stands in stark contrast to the expressly stated position of the very entity tasked with, and regularly relied upon by CBIA, to provide guidance on the meaning of the statute.

2025 WL 3182580, at *34 (E.D.N.Y. Nov. 14, 2025). Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**.[12]

**Conclusion**

For all of the above-discussed reasons, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendants' Cross-Motion for Summary Judgment is **GRANTED**. The question of where the litigation proceeds from here is a murky one. It is clear that CBIA was the only Plaintiff in this case alleging organizational standing. The remaining Plaintiffs had collectively relied on the organizational standing of CBIA to pursue their First Amendment claims under Section 1983. But the Court did not previously determine whether those Plaintiffs could assert associational standing under *Ex Parte Young*, in seeking injunctive relief, although the issue was raised in the briefing on Defendants' Motion to Dismiss. And if there is a path forward, whether additional discovery may be necessary is unclear, at least to the Court. In short, the Court having found herein that Plaintiff CBIA lacks organizational standing, it is unclear what, if anything, is left to do. Accordingly, an in-person Status Conference shall be held before the undersigned on **March 12, 2026 at 2:00 P.M.** in Courtroom Two, 915 Lafayette Blvd, Bridgeport, CT, at which the parties shall be prepared to discuss the path forward in this litigation in light of this decision.

---

[12] Insofar as CBIA lacks standing to assert its pre-enforcement claim, the Court need not determine at this juncture whether Section 31-51q, as amended, unlawfully regulates protected employer speech in violation of the First and Fourteenth Amendments. However, the Court observes that on September 30, 2025, a district court in the Eastern District of California preliminarily enjoined enforcement of a materially identical statute (Cal. Lab. Code § 1137) on First Amendment grounds. *See California Chamber of Com. v. Bonta*, No. 24-CV-3798 (DJC), 2025 WL 2779355 (E.D. Cal. Sept. 30, 2025). The Court finds the district court's decision to be both thorough and well-reasoned. Further, it addresses many of the same issues raised and thoroughly briefed in this case. *See id.* An appeal of the district court's decision is presently pending before the Ninth Circuit. And the outcome of the appeal, however it is decided, may have some bearing, or at least provide persuasive authority, regarding the constitutionality of Connecticut's largely identical statute.

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of February 2026.

                                           */s/ Kari A. Dooley*
                                           KARI A. DOOLEY
                                           UNITED STATES DISTRICT JUDGE